From A. B. Geary, Chester, Pa.

---

### Removal of School Directors.

*School law—Contracts for supplies—Removal of directors for purchasing desks in violation of the School Code of May 18, 1911.*

School directors who let a contract for desks in an amount exceeding $100 without first soliciting sealed quotations from two or more firms and opening such bids and quotations at a regular meeting, as required by section 707 of the School Code of May 18, 1911, P. L. 309, are guilty of neglect of the duties imposed upon them by the Code and will be removed from office.

Petition to remove school directors. C. P. Luzerne Co., Dec. T., 1923, No. 1172.

*John D. Farnham, P. J. McCormick* and *T. D. Shea,* for petitioners.

*M. F. McDonald, M. F. Shannon, M. J. Mulhall* and *J. V. Kosek,* for respondents.

*C. B. Lenal·an,* for Michael McHugh.

McLEAN, J., Feb. 14, 1924.—These proceedings were instituted under section 217 of the School Code by the requisite number of taxpayers of Wilkes-Barre Township as petitioners.

The petition was filed Nov. 24, 1923, and the material averments are as follows:

"2. That Patrick Conyngham, James Hanahen, Manus Ward, Patrick Finn, James Finn, Michael McHugh and John Kluskey are now the duly elected and acting members of the School District of the Township of Wilkes-Barre, and were the directors and acting as such during the entire year of 1923.

"3. That the School District of the Township of Wilkes-Barre is a district of the third class, and designated and classified under the Act of Assembly of 1911, known as the 'School Code.'

"4. During the year 1923 and since the first Monday of July, 1923, the above-mentioned school directors of the said school district acted unlawfully and have been and are guilty of misdemeanors and crimes, committed while acting in their official capacity as directors, against the said School District of Wilkes-Barre Township, and to the great injury of the public thereof, in that they are guilty of the following acts:

Removal of School Directors.

"*(a)* In paying to Dr. Edward Flanagan, as medical examiner or inspector, the sum of $1000 on Nov. 7, 1923, the whole year's salary, before the said examiner or inspector had done his work to warrant the payment to him of the said sum of money.

"*(b)* In paying to M. J. Donohue, contractor, a sum of money in excess of the amount that he was entitled to under the terms of his contract, or for work performed by him on account of his contract for the erection of a school building on Chestnut Street, in the said Township of Wilkes-Barre.

"*(c)* In paying to T. A. Curley, plumbing and heating contractor, a sum of money on account of contract awarded to the said Curley for work to be performed on a certain school building to be erected on Chestnut Street, in the said Township of Wilkes-Barre, namely, $1800 or thereabouts, the same having been paid before any work of any description was performed by the said Curley on account of said above-mentioned contract.

"*(d)* In awarding a contract for desks to Stafford & Co., a firm represented by M. F. Shannon, an employee of the said school district, said award having been made without conforming to the law in having submitted to the board other bids, as it was well known to said members of the school board that the bid submitted, other than the Stafford bid, was fictitious and presented for the purpose of deceiving the public.

"*(e)* That the school directors carelessly, negligently and criminally misappropriated the funds of the said school district in the employment of unnecessary employees, who were performing no service for the amount paid to said employees, namely, Daniel Ward, clerk to supervising principal; Margaret McGinty, clerk to supervising principal; Jule Commiskey, supply clerk, and Barbara McGlynn, librarian.

"*(f)* That the said directors on Aug. 7, 1923, drew an order for Stafford & Co. in the sum of $295, and the said order was cashed at the South Side Bank and Trust Company of Wilkes-Barre, Pa., the said money distributed to and among certain members of the said school board, heretofore named. That at the time the said order was drawn, the said school district owed nothing to the said Stafford & Co., but the said order was drawn by certain of the directors for the sole and express purpose of taking this money for their own use, thereby defrauding the said school district out of the said sum of $295.

"*(g)* That the said school directors, at their meeting held in September, 1923, without due regard for the interest of the said school district, in violation of law and in neglect of their duty, authorized and directed the satisfaction of a judgment of said school district against Patrick Conyngham, one of the directors of the said school district, the said judgment being on record in the Prothonotary's office of Luzerne County, Wilkes-Barre, and nothing having been paid or no action taken to secure the payment of the amount of said judgment. That the above-named school directors, in violation of law and in neglect of their duty under the statute above referred to, and to the prejudice of the petitioners' rights as taxpayers in said school district, as well as other taxpayers, paid out moneys of said school district, as heretofore stated, misappropriated the funds on the Stafford order as charged, and acted contrary to the statute governing school directors in a criminal manner."

One of the school directors, Michael McHugh, by answer filed, denied any participation in the alleged illegal acts, and averred that he had in every instance opposed the actions complained of, and had recorded his protest by voting against the resolutions authorizing the same.

Two of the school directors, James and Patrick Finn, filed no answer.

The remaining school directors, viz., James Hanahen, Patrick Conyngham, Manus Ward and John Kluskey, filed answers denying sub-paragraphs *(b)*, *(c)*, *(d)*, *(e)* and *(f)* of paragraph 4, admitting sub-section *(a)* and denying paragraph *(g)*, with certain qualifications.

The testimony produced at hearing failed to connect Michael McHugh with the alleged illegal acts, and at the close of testimony submitted by petitioners, the rule was discharged as to this respondent.

The averments in sub-sections *(b)* and *(c)* were not sustained by evidence and were not pressed at argument.

The averment in sub-section *(a)*, admitted by respondents, we do not construe as constituting neglect of duty, but rather pertains to matters resting in the sound discretion of the school board.

Section 1501 of the School Code provides: "Every school district of the first, second or third class in this Commonwealth shall annually provide medical inspection of all the pupils of its public schools by proper medical inspectors, to be appointed by the board of school directors of the district. . . . All such medical inspectors shall be physicians, . . . and shall be paid such amounts as the board of school directors may determine."

If this discretion is not properly exercised, it would not seem that the school directors may be called to account therefor in proceedings of this character.

Sub-section *(e)* avers facts which likewise do not involve the failure or refusal to perform a duty imposed by the School Code, and, therefore, do not constitute causes for removal in these proceedings.

Sub-section *(g)* avers facts which, if proven, would indicate gross misconduct on the part of the directors involved. The resolution of the school board complained of does not specify the particular judgment against Patrick Conyngham which it directed should be satisfied. The testimony indicates that there are upon the judgment docket of this county at least two judgments in favor of the school district and against Patrick Conyngham, one of which it appears might have properly been satisfied by the board. The respondents are, therefore, certainly entitled to the doubt in this particular, and we are of the opinion that this averment has not been sustained by the evidence.

Sub-section *(f)* avers facts which, if true, indicate gross fraud and corruption and would involve the violation of duties imposed by the Code, and would properly constitute grounds for removal in these proceedings. Upon this specification the testimony of Patrick Finn, one of the respondents, is as follows:

After the school board meeting of Aug. 7, 1923, he met John Kluskey, one of the school directors, and together they agreed to obtain money from the school district by having an order for $295 drawn to Stafford & Co., for which company Michael Shannon, solicitor for the school board, was the agent; that the school district did not owe this sum, or any other sum, to Stafford & Co., nor had any bill for that amount been presented to the school board for its approval; that they went together to the home of James Finn, one of the school directors, and directed Mrs. Mary Finn, wife of James Finn, to write a school order or check, taken from the order book in the possession of Patrick Finn, to Stafford & Co. for $295 and a stub corresponding and bearing serial No. 2; that the check or order, drawn on the treasurer and payable at the depository bank, was then signed by Kluskey as treasurer and by Patrick Finn as secretary and presented for signature to James Finn, president *pro tem.* of the school board, in the absence of James Hanahen, who was then in Montana; that James Finn refused to sign, as president, the order or check, and thereupon Michael Shannon signed the name of James Hanahen as presi-

dent and the order was taken by Kluskey; that the next day Kluskey gave Patrick Finn $160 and Patrick Finn gave $80 of this amount, a few days later, to Hanahen, and explained to him the transaction; that Patrick Finn, later, went to the bank and saw the order in the hands of the bank clerk, marked "paid;" that at the same time that Mrs. Finn drew order No. 2, he, Patrick Finn, directed Mrs. Finn to draw orders Nos. 3, 4 and 5 for bills which had not been presented to or approved by the school board; that Mrs. Finn drew these orders, he signed them as secretary, Kluskey signed them as treasurer, and Michael Shannon then signed upon the orders the name of James Hanahen as president.

The testimony of Mrs. James Finn is that she drew the order or check in question and filled in the stub corresponding to the order at the direction of Patrick Finn in the presence of Kluskey; that at the same time she drew orders 3, 4 and 5.

The testimony of James Finn is that he was asked by Patrick Finn and John Kluskey to sign the order in question, and upon his refusal to do so, Michael Shannon, in his presence, signed the name of James Hanahen as president.

The order book was offered in evidence, showing the stub corresponding to order No. 2, filled out in the name of Stafford & Co., for supplies in the amount of $295.

John Kluskey, treasurer of the board, when called as a witness, denied the whole transaction in reference to order No. 2, but admitted signing orders 3, 4 and 5, and produced the treasurer's bank book, return vouchers and statements furnished by the bank, which did not disclose that order No. 2 had been paid through the bank, but showed that orders 3, 4 and 5 had been paid by the bank, and these orders were offered in evidence.

The cashier of the bank was called and stated that he had no recollection of the check or order No. 2, but recalled Patrick Finn being at the bank to inquire about the treasurer's account, and further testified that all the treasurer's orders or checks paid by the bank had been returned to John Kluskey, the treasurer.

Michael Shannon was called and denied the entire transaction.

James Hanahen was called as a witness and denied receiving the money from Finn or any knowledge of the transaction, and pronounced as forgeries what purported to be his signatures on orders 3, 4 and 5.

From the evidence, we are firmly of the opinion that order No. 2 was drawn and signed as testified to by witnesses for the petitioners, but the testimony failed to show that any moneys of the school district were actually paid out on this order; therefore, we cannot find that the provision of the School Code, in reference to the payment of moneys of the school district, was actually violated. However, in preparing and signing an order on the treasurer for a bill not acted upon and approved by the board, the secretary, Patrick Finn, violated section 315 of the School Code, and the treasurer, John Kluskey, in signing said order for payment, before the order had first been approved by the board of school directors and signed by its president, violated section 324 of the School Code. The circumstances surrounding the transaction, notwithstanding the fact that no moneys of the school district were actually misappropriated, serve to create a most unwholesome and vicious atmosphere and cast suspicion upon the actions of the school directors in other matters.

Sub-section (d) avers facts which involve directly a violation of section 701 of the School Code, and notwithstanding the averment does not specifically set forth wherein the provisions of the act have not been complied with,

Removal of School Directors.

nevertheless, the mere assertion of the fact set forth in the petition was sufficient to put respondents upon notice of the violations of the Code involved, and the court, upon proof of the fact, would be warranted in finding what duties, if any, imposed by the School Code had been neglected or not performed.

In reference to this specification, the minutes of the meeting of the school board held Sept. 24, 1923, show the following resolution:

"Pat Conyngham made a motion, seconded by Ward, that the secretary be authorized to ask for quotations on school furniture for the new building, and on roll call the directors voted as follows:

"Conyngham, yes; Ward, yes; Kluskey, yes; P. Finn, yes; J. Finn, yes; McHugh, yes; Hanahen, yes.

"All directors voting in the affirmative, the president declared the motion carried."

The minutes of the meeting of the school board of Oct. 3, 1923, show the following proceedings:

"The next order of business was the reading of quotations on furniture:

Empire Building, Rochester, N. Y.
Wilkes-Barre, Pa., Oct. 3, 1923.

P. F. Conyngham, Sec.,

Dear Sir: I understand that you are to purchase desks for your building. I respectfully submit my bid for your consideration. My prices on our desks f. o. b. factory are as follows:

| | |
|---|---|
| 1 & 2 single desks.........$6.25 | |
| 3 & 4    "      "   ......... 6.10 | Teachers' Desks. |
| 5 & 6    "      "   ......... 5.90 | No. 19...................$35.25 |
| Fronts ................... 5.25 | No. 16................... 27.50 |
| Rears ................... 4.50 | |

Trusting that I may be favored with your order, I am, respectfully yours,
P. E. Flood, Agent.

---

E. H. Stafford Mfg. Co.

Mr. Pat Conyngham,

Dear Sir: The Stafford Man. Co. will furnish your district with school desks at the following prices f. o. b. factory. These desks are first class and guaranteed as such.

| | Economic | Liberty | |
|---|---|---|---|
| Single desks 1 & 2.........$6.25 | | $6.50 | |
| "      "    3 & 4......... 6.00 | | 6.25 | Teacher's desk. |
| "      "    5 & 6......... 5.75 | | 6.00 | No. 47...........$33.50 |
| Fronts all sizes........... 5.25 | | 5.50 | |
| Rears   "    "   ........... 4.25 | | 4.50 | |

Respectfully, E. H. Stafford Mfg. Co.

"Mr. Conyngham made a motion, seconded by Kluskey, that the quotations be referred to the property committeee, with power to purchase same on the examination of sample desks. . . . All directors voting in the affirmative, the president declared the motion carried."

Thereafter, it appears the school directors purchased from E. H. Stafford Manufacturing Company a number of desks and entered into a contract therefor, dated Oct. 9, 1923, involving an expenditure of $1381, the copy of the contract retained by the school board having been offered in evidence.

Section 707 of the School Code provides: "When it is deemed necessary to purchase desks or other supplies of the first class, costing $100 or more, the board of school directors shall solicit sealed quotations from two or more firms, manufacturers or dealers in such supplies, and at regular meeting shall open such bids and quotations, and shall accept the lowest bid," etc.

Removal of School Directors.

We here quote the testimony of P. E. Flood in reference to the bid submitted by him:

Examination by Mr. McCormick: "Q. Did you furnish a bid for the Empire Seating Company, Inc., to the Wilkes-Barre Township School District on Oct. 3, 1923? A. I signed a paper. That was all·I did there. My name is on there. Q. I wish you would look at plaintiffs' exhibit 12. Tell me what you mean by signing a paper, and what was on that paper when you signed it? A. I understand they were going to buy some desks there, and the law required two bids, and I understood he was about to get the order. Q. Who was? A. And the result said I will sign this and have a bid in. Q. Were these items on the bid when you signed it? A. No, sir. Q. To whom did you give that paper? A. To Shannon. Q. What was on the paper when you gave it to Shannon? A. Nothing but the heading and my name. Q. Then all the items from 'October 3, 1923,' to 'Respectfully yours' was not on that when you signed? A. No, sir. I told him to fill in that himself, to fill in those prices—there would be, perhaps, five cents difference on it. Q. Who do you mean? A. To fill in these; that is (indicating). Q. Did he do it in your presence? A. No. Q. You simply gave him a blank piece of paper with your name on it, with your name signed to it? A. Because on this we couldn't put in a bid on these goods, because there was three ways in which you have to have a bid on desks. There is an f. o. b. cars factory, and another bid for f. o. b. cars at destination, and then another which is f. o. b. cars destination and installed in school. I couldn't give him any bid, as I didn't know which he was figuring on, whether f. o. b. cars factory, or f. o. b. Wilkes-Barre, or f. o. b. cars delivered and installed in school." By the Court: "Develop why the paper was given to Shannon." "Q. Why was the paper given to Shannon? A. Because it was in the way to make out two bids. Q. For what purpose? Why two bids? Explain to the Court. A. The law calls for two bids. Q. And they had to have two bids before they could award it at all, is that right? A. Yes, that is right. Q. The Empire Seating Company, Inc. Is there such a company now? A. No. Q. They have been out of business for some time? A. Yes. But this company only manufactured one desk and that was a movable desk. They didn't manufacture the desk wanted on this bid—that was a combination desk. Q. Was it in existence at the time you signed your name to this paper? A. No; but the result was that made no difference in regard to the combination desk, because they didn't manufacture that kind of a desk, and if such a bid was put in, I could get the desk as well as them, as they were jobbers, the same as myself. Q. But you never expected to get the contract? A. Not likely. Q. You didn't give your bid for that purpose. You simply signed it to help them out, so Shannon could get the contract? A. As I understand, he was getting it all the time."

Bid, marked Plffs. Ex. 12, offered in evidence.

Cross-examination by Mr. McDonald: "Q. When you say that Mr. Shannon came to see you about this, who do you mean by Mr. Shannon? A. M. F. Shannon, I think, the attorney. Q. The gentleman seated there? A. Yes. Q. Are you not mistaken about that? Wasn't it his boy who saw you? A. Yes; and he told me, too—the both of them. Q. Now, I am speaking about the time you signed your name? A. Well, I signed my name—I signed my name for him and gave him the blank—let me see the date of that—well, these are the actual prices to-day. They couldn't get these prices to-day at the factory. These are lower prices than they would pay at the factory at that time. They are 25 cents higher to-day than is on that sheet. Q. How about these from the Stafford Company? A. That is $6.50 and $6.25 and $6

Removal of School Directors.

and $5.30 is actual prices to-day at the factory, and nobody can get them at any less. Q. In other words, if they bought these supplies at these prices, they were not paying any more than they should have? A. Oh, no; they were not. To this day, these prices put on there, you can't get them at the factory to-day, as they are raised 25 cents. Q. And, as far as this bid is concerned, you had no relations whatever with the members of this school board? A. No, sir. Q. None at all? A. No, sir; none at all. Q. Whatever relations you did have with—whatever relations you did have were with either one of the two Shannons? A. Yes. Q. And no one else? A. No. Q. Then, as I understand the testimony, you simply signed a blank paper? A. Yes; that is all I did. I didn't do it with any intent to corruption, and I was promised nothing from it. I will never do the likes again." Mr. McCormick: "Q. Did you ever mail that bid? Did you ever send that off through the mails to the Secretary of the Wilkes-Barre Township School District, P. F. Conyngham? A. No." By the Court: "How did it get to the school board? Who did he give it to?" Mr. McCormick: "He said he gave it to M. F. Shannon." Mr. McDonald: "Is your recollection right as to whether it was young Shannon or Mr. Shannon? A. Well, the fact is both of them came to me." Mr. McDonald: "I mean as to whom you gave it to, do you remember? A. That one, at that time, was young Mr. Shannon."

From this testimony it appears that a bid signed by Flood at Shannon's request, subsequently filled in by Shannon, the agent for Stafford & Co., was presented by Shannon to the school board for the purpose of having two bids before the board and ostensibly complying with the law.

The testimony of Patrick Conyngham, secretary of the school board, is as follows:

Examination by Mr. McCormick: "Q. You are Secretary of the School Board of Wilkes-Barre Township? A. Yes. Q. When were you elected secretary of the board? A. Sept. 10th. Q. Sept. 10, 1923? A. Yes. Q. And you were acting as secretary on Oct. 2, 1923? A. Yes. Q. I show you plaintiffs' Exhibit No. 11, evidently a bid of E. H. Stafford Company, together with Exhibit 11-A, a contract, and also a bid of the Empire Seating Company, Inc., with a line drawn through it, dated Oct. 3, 1923, marked plaintiffs' Exhibit No. 12, addressed to P. F. Conyngham, secretary, the Stafford bid being to Patrick Conyngham, secretary school board. Where did you get those bids? A. They came by mail. Q. Both bids came by mail? A. Yes. Q. Have you the envelopes they came in? A. No, sir. Q. You remember them very distinctly, do you? A. Yes. Q. Do you know who represented the firm, or who represented before the School Board of Wilkes-Barre Township the Stafford Company? A. Michael Shannon, Jr. Q. He is a son of Michael Shannon, the attorney for the School Board of Wilkes-Barre Township? A. Yes, I suppose so. Q. How old a boy or man is he, do you know? A. No, I don't know how old he is. Q. About how old? A. I imagine about twenty-two or twenty-three. Q. Does he live in Wilkes-Barre Township? A. Yes. Q. Is he living there now? A. Yes. Q. What is his business? A. Well, I don't know whether he carries on any other business outside of that or not. Q. Do you know who represents the Empire Seating Company, Inc? A. I don't know who did. You got the bid, I think; see the name on the bottom. Q. From who did you get that bid? A. From Flood, I suppose. Q. Did that come by mail or was it handed to you? A. I got it by mail. Q. Have you the envelope in which that came? A. I have not. Q. You are sure you received that bid by mail? A. Yes. Q. Isn't it a fact that Michael Shannon, Jr., handed to you, as secretary of the school district, both of these bids, instead of them

coming to you by mail? A. No, sir. Q. And that they were handed to you at a school board meeting? A. No, sir; they came to me by mail. Q. How? A. The bids did. Q. The bids came to your house? A. Yes. Q. And isn't it a fact that you, as a member of the board, knew and was acquainted with the fact that the bid of the Empire Seating Company was fictitious, a fictitious bid, and merely put in for the purpose of permitting the bid to be given to E. H. Stafford Company? A. No, sir; I know nothing of the kind. Q. You did not? A. No, sir; I did not. Q. Did Michael Shannon, attorney for the school board, ever ask you to award this bid to Stafford & Co.? A. No, sir. Q. Did Michael Shannon, the attorney, during the last year—I will say in 1922—represent the firm of E. H. Stafford & Co.? A. Last year? Q. Yes. A. I don't know. Q. You are a member of that school board. How many years have you been a member of that school board? A. About thirteen. Q. And don't you know it to be a fact that for the last ten years Shannon represented—that Michael Shannon, the present attorney for the school board, represented the Stafford Company? A. He did, quite a few years ago. Q. Didn't he represent them in 1922? A. I don't think so. Q. Do you know whether he did or not? A. No, sir."

In his testimony Conyngham states that he got the Flood bid through the mail at his home, but did not produce the envelope in which the bid was received. The bid was dated Oct. 3rd, and was given by Flood to Shannon. The meeting of the school board at which the bid was presented was held on Oct. 3rd. It seems improbable that the bid handed to Shannon in incomplete form on Oct. 3rd could have been filled out, mailed and received the same day by Conyngham at his house in time for the school board meeting that night.

The requirement of the law in reference to the purchase of desks is explicit.

The board of school directors shall solicit sealed quotations from two or more firms.

The board of school directors at regular meeting shall open such bids and quotations.

It does not appear from the minutes, or from the testimony of any witnesses, that either of these requirements were complied with. The minutes of Sept. 24th show that the secretary was directed to "ask for quotations." It is manifest from the testimony of the secretary and the testimony of Flood that he did not do so. The minutes of Oct. 3rd do not show that sealed bids were received or opened at the meeting of the board. The whole purpose of the requirement, viz., to obtain competitive bids, and to preclude opportunity for one bidder to have knowledge of the contents of another bid, is defeated if the exact and precise mandates of the act are not complied with in good faith. It was the duty of the school directors to ascertain, before letting the contract, that the law had been complied with. Had they investigated, only one discovery could have been made, and that was that the law had not been complied with. By their neglect to comply with the law, they have made possible the basest and most contemptible fraud, and whether they were aware of the true state of affairs or not is of no concern. The law lays down the method by which they must proceed; they failed to perform the duty imposed and must suffer the consequences.

We find the following

## Conclusions of law.

1. It became the duty of the school board, in the purchase of desks "costing $100 or more, to solicit sealed quotations from two or more firms, . . . and at regular meeting to open such bids and quotations and accept the lowest bid. . . ."

2. That the school board let a contract for desks to Stafford & Co. and agreed to pay therefor the sum of $1381, in violation of section 707 of the Code.

3. That such violation constituted neglect in the performance of duty imposed by the School Code within the purview of section 217 thereof.

The terms of office of three of the school directors, namely, James Finn, Manus Ward and Patrick Conyngham, having expired since the filing of the petition, and the persons duly elected to succeed them having qualified and assumed office, it would be entirely futile in our order of removal to include James Finn, Manus Ward and Patrick Conyngham, except for the single purpose of making them ineligible for a period of five years hereafter to again serve as school directors, and we, therefore, direct their removal for this purpose, notwithstanding the expiration of their terms of office.

Upon consideration of the petition and answer and the testimony, the court being of opinion that the duties imposed upon the said board, which, by the provisions of the act, were made mandatory upon them to perform, have not been performed and have been neglected by them, the rule to show cause why Patrick Conyngham, James Hanahen, Manus Ward, Patrick Finn, James Finn, Michael McHugh and John Kluskey, School Directors of Wilkes-Barre Township, should not be removed from office is made absolute as to Patrick Conyngham, James Hanahen, Manus Ward, Patrick Finn, James Finn and John Kluskey, and they are hereby removed from said office of school directors. The following persons are appointed for the unexpired terms of the officers removed: Frank Kastreva, in place of James Hanahen; John J. Kerrigan, in place of Patrick Finn, and John Brogan, in place of John Kluskey. The terms of office of Manus Ward, Patrick Conyngham and James Finn having expired, we are not required to appoint their successors.

From F. P. Slattery, Wilkes-Barre, Pa.